# United States Court of Appeals
## For the First Circuit

No. 10-1459

UNITED STATES,

Appellee,

v.

RAMON ZORRILLA-ECHEVARRÍA,

Defendant, Appellant,

ANDRES CASTILLO-PEÑA,

Claimant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Chief Judge,
Stahl and Thompson, Circuit Judges.

Luis Rafael Rivera, on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Julia M. Meconiates, Assistant United States Attorney, and Rosa Emilia Rodriguez-Velez, United States Attorney, on brief for appellee.

November 22, 2011

**LYNCH**, **Chief Judge**.  This case involves the procedures governing criminal forfeiture, the distinction between a criminal forfeiture that constitutes an in personam money judgment and a criminal forfeiture of specific assets, and the rights of third parties in a forfeiture scenario.  We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.  The case provides a cautionary tale for forfeitures in bulk cash smuggling and other cash seizure cases.

I.

On October 5, 2007, Ramon Zorrilla-Echevarría boarded the Carribean Express, a ferry due to travel from Mayaguez, Puerto Rico to the Dominican Republic.  Zorrilla-Echevarría checked as luggage two doors, similar to those that would be found on a house, before boarding the ferry.  United States Customs and Border Patrol is in charge of inspecting luggage and cargo on ferries making such foreign trips.  Customs, through use of a routine X-ray machine on the doors, detected currency totaling approximately $543,801 inside of them.  Zorrilla-Echevarría had not declared any of the currency and was arrested.  Customs seized the cash located in the doors and appears to have retained possession of it throughout the course of the proceedings in this case.

On October 24, 2007, a grand jury issued a two count indictment against Zorrilla-Echevarría.  Count one charged Zorrilla-Echevarría with knowingly and willfully transporting

-2-

approximately $543,826[1] in cash from Mayaguez, Puerto Rico to the Dominican Republic, without first filing a report in compliance with regulations promulgated by the Secretary of the Treasury, in violation of 31 U.S.C. § 5316(a)(1)(A) & (b) and § 5322(a).[2]

Count two charged Zorrilla-Echevarría with willfully evading the reporting requirements of § 5316 by concealing the same amount of currency inside the two wooden doors in an attempt to transport the currency to the Dominican Republic, in violation of 31 U.S.C. § 5332.[3]

Criminal forfeiture of $543,826, pursuant to 31 U.S.C. § 5317(c)(1) and § 5332(b)(2), was sought based on both counts of the indictment. These provisions require a court, when imposing a sentence for violations of various sections of Title 31, including the portions Zorrilla-Echevarría was charged with violating, to

---

[1] The record does not indicate why this amount and the $543,801 testified to at trial differ.

[2] These sections provide a criminal penalty for an individual who "willfully" "transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time . . . from a place in the United States to or through a place outside the United States," without first filing a report with the Secretary of the Treasury. 31 U.S.C. §§ 5316(a)(1)(A), 5322(a).

[3] This "[b]ulk cash smuggling" is a criminal offense under § 5332. The section provides a criminal penalty for "[w]hoever, with the intent to evade a currency reporting requirement under section 5316, knowingly conceals more than $10,000 in currency or other monetary instruments on the person of such individual or in any conveyance, article of luggage . . . or other container, and transports or transfers or attempts to transport or transfer such currency . . . from a place within the United States to a place outside of the United States." 31 U.S.C. § 5332(a)(1).

"order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto," utilizing the procedures found in 21 U.S.C. § 853. 31 U.S.C. § 5317(c)(1); see also id. § 5332(b)(2) (substantially same forfeiture provision). In addition, § 5332(b)(4) allows the court to "enter a personal money judgment against the defendant for the amount that would be subject to forfeiture" when "the property subject to forfeiture . . . is unavailable, and the defendant has insufficient substitute property that may be forfeited." Id. § 5332(b)(4).

A one-day jury trial was held on January 14, 2008, and the jury found Zorrilla-Echevarría guilty on both counts. The government then moved for a preliminary forfeiture order, for the same amount as detailed in the indictment ($543,826), pursuant to Federal Rule of Criminal Procedure 32.2. The district court granted this motion on March 17, 2008, ordering that the "Defendant shall forfeit to the United States $543,826.00 in U.S. currency, which is equal to the total amount of money Defendant obtained as the result of the above-mentioned violations."

Zorrilla-Echevarría was sentenced to 41 months' imprisonment on May 14, 2008. At the sentencing hearing, the government requested that the forfeiture amount be included as part of the judgment; the judge agreed, but as events transpired, that did not happen.

The day after the sentencing hearing, Zorrilla-Echevarría and a third party, Andres Castillo-Peña, filed petitions for ancillary hearings, see 21 U.S.C. § 853(n); Fed. R. Crim. P. 32.2(c), asserting that Castillo-Peña was the rightful owner of $343,000 of the forfeiture amount, while Zorrilla-Echevarría owned the remaining $200,751.

Before these petitions were acted on, the district court entered judgment as to Zorrilla-Echevarría's crime. The judgment, however, made no mention of the forfeiture the district court had agreed to impose in its order of preliminary forfeiture and at the sentencing hearing.

Zorrilla-Echevarría immediately filed a motion for reconsideration of his sentence, which was denied on June 5. He also filed a notice of appeal from the judgment on June 3, 2008; this became case number 08-1823 on appeal.

The district court denied both petitions for ancillary hearings on June 5, explaining that "[a]ncillary hearings are not appropriate in the context of a money judgment." Both Zorrilla-Echevarría and Castillo-Peña moved for reconsideration, which was denied on June 25. The district court again explained that the forfeiture was pursuant to a money judgment, rather than a forfeiture of specific property, and "Zorilla and Castillo cannot establish an interest in this money judgment." A second notice of appeal was filed, by both Castillo-Peña and Zorrilla-Echevarría,

-5-

from this set of decisions regarding the ancillary hearing on July 11, 2008. This became case number 08-2008 on appeal.

These appeals were consolidated on January 6, 2009. However, neither appeal was ever briefed. There were numerous requests for extensions of time by Zorrilla-Echevarría and Castillo-Peña, and numerous notices of default and intent to dismiss issued by the court for failure to prosecute the appeal. Eventually, Zorrilla-Echevarría filed a motion for voluntary dismissal on December 16, 2009; Castillo-Peña filed a similar motion on March 31, 2010. A judgment dismissing both cases pursuant to Federal Rule of Appellate Procedure 42(b) was issued on April 9, 2010.

Meanwhile, on October 13, 2009, the government filed in the district court a motion to amend the preliminary forfeiture order to change the amount of forfeiture from "$543,826 in U.S. currency" to "$543,731."[4] However, it also attached a proposed forfeiture order which was not suitable for money judgments. The district court granted this motion on October 20, 2009. The order accompanying this motion, however, discussed the procedures and provisions relevant to a forfeiture of specific property, and not to imposition of a money judgment. The order directed the government to publish notice of the order, so that third parties

_____

[4] The motion did not explain the reason for this change, other than noting that the preliminary order of forfeiture "[i]nadvertently" indicated the wrong amount.

who might claim an interest in the property could have an opportunity to establish that interest, as is required before a forfeiture of specific property may become final as to third parties. See Fed. R. Crim. P. 32.2(b)(4)(A). The government published notice as required by the order for the requisite time period, and submitted a notice certifying this compliance on December 15, 2009. This was not consistent with the court's earlier statement that it had intended a money judgment.

Shortly thereafter, on December 23, Zorrilla-Echevarría filed a motion to strike and for a return of property, claiming that, because the preliminary forfeiture order was for a money judgment, the district court and the government could not now switch tack and attempt to impose a forfeiture of specific property. In a sense, this was a switch in tack by Zorrilla-Echevarría, who had earlier challenged the order as one not for a money judgment. Zorrilla-Echevarría further argued that the time period for amending the judgment had lapsed, and, as a result, that Zorrilla-Echevarría and Castillo-Peña were entitled to a return of the seized cash.

This motion was denied by the district court on March 12, 2010. The district court reiterated that the forfeiture order was in the form of a money judgment. It then explained that it viewed the government's motion to amend the forfeiture order, which had been filed on October 13, 2009 and granted on October 20, 2009, as

a motion to attach the cash (which was still held by Customs) under Federal Rule of Civil Procedure 64, which provides that "throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," including attachment.  The court then found that under Puerto Rico Rule of Civil Procedure 56.2, it could attach the funds given that there was "a debt liquid, due, and payable."  The court concluded by ordering the attachment of the $543,731 of cash in possession of Customs, "pending execution of the money-judgment forfeiture entered against Defendant."

At the same time, the district court entered another order that amended two prior orders.  First, the order amended the amended preliminary order of forfeiture (which was issued on October 13, 2009) to remove all references to the procedures involved with orders of forfeiture of specific property, and instead to simply provide that Zorrilla-Echevarría "shall forfeit $543,731 in the form of a money judgment to be enforced against him."  Second, the order amended the judgment to provide that "[t]he defendant shall forfeit to the United States the amount of $543,731."

Zorrilla-Echevarría and Castillo-Peña have appealed, and this decision is from that appeal.

-8-

After the filing of the notice of appeal, on August 9, 2010, the government filed a motion requesting issuance of a final order of forfeiture, in the amount of $543,731. The court granted the motion on August 31, and once again explained that no ancillary proceeding was necessary before the order became final because the forfeiture consisted of a money judgment.

## II.

There are three different types of criminal forfeiture; the relevant statutory provisions, and applicable procedures, vary between the types. As this case involves dispute over which type of forfeiture occurred and what procedures were required, a brief description of each type is necessary. Further complicating matters is the fact that Federal Rule of Criminal Procedure 32.2 was amended in 2009, after the original entry of judgment in this case but before the amendment of the judgment to include the forfeiture order. The pre-2009 rules are discussed below.

A criminal forfeiture may take the form of either (1) "an in personam judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense," (2) forfeiture of specific assets related to criminal activity, or (3) forfeiture of "substitute assets" if the specific assets are unavailable. United States v. Candelaria-Silva, 166 F.3d 19, 42 (1st Cir. 1999). Only the distinction between the first two types is relevant here.

The beginning of the forfeiture process is the same for both types. The government must include notice of intent to seek forfeiture in the indictment, and as soon as practicable after a verdict or guilty plea, "the court must determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. P. 32.2(a), (b) (2008).

At this point, the procedures diverge. For a money judgment forfeiture, the court "must determine the amount of money that the defendant will be ordered to pay," and upon such a determination must issue a preliminary notice of forfeiture "setting forth the amount of any money judgment." Fed. R. Crim. P. 32.2(b)(1), (b)(2) (2008). This order becomes final at sentencing, "and must be made a part of the sentence and be included in the judgment." Fed. R. Crim. P. 32.2(b)(3) (2008). At this point the money judgment forfeiture order becomes appealable. Fed. R. Crim. P. 32.2 advisory committee's notes on the 2000 amendments ("Because the order of forfeiture becomes final as to the defendant at the time of sentencing, his right to appeal from that order begins to run at that time."). There is no provision for third party involvement in the forfeiture determination: "no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment." Fed. R. Crim. P. 32.2(c)(1) (2008). That is because "[a] money judgment is an in personam judgment against the defendant and not an order directed at specific assets in which any

-10-

third party could have any interest." Fed. R. Crim. P. 32.2 advisory committee's notes on the 2000 amendments.

By contrast, for a forfeiture of specific assets, the court "must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1) (2008). If such a nexus is found, the court must issue a preliminary notice of forfeiture "directing the forfeiture of specific property without regard to any third party's interest in all or part of it." Fed. R. Crim. P. 32.2(b)(2) (2008).

Before this order may become final, under the forfeiture statute at issue in this case, 21 U.S.C. § 853, the government must "publish notice of the order and its intent to dispose of the property." 21 U.S.C. § 853(n)(1). "Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited . . . may, within thirty days of the final publication of notice . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." Id. § 853(n)(2).

If no such petition is filed, the order becomes final "if the court finds that the defendant . . . had an interest in the property that is forfeitable under the applicable statute." Fed. R. Crim. P. 32.2(c)(2) (2008). The forfeiture must be made a part of the sentence and included in the judgment, as is the case with

money judgments.  Fed. R. Crim. P. 32.2(b)(3) (2008).  At this point in time, again as was the case with money judgments, the order is final and appealable by the defendant.  See Fed. R. Crim. P. 32.2(c)(2) (2008)  ("The defendant may not object to the entry of the final order on the ground that the property belongs, in whole or in part, to a codefendant or third party; nor may a third party object to the final order on the ground that the third party had an interest in the property.").

If a third-party petition is filed, the court is to determine whether the third party has a valid interest in the property and amend, or leave unaltered, the final order of forfeiture as is appropriate.  See 21 U.S.C. § 853(n)(6); Fed. R. Crim. P. 32.2(c)(2) (2008).  This ancillary hearing is irrelevant to the finality of the order with respect to the defendant.  Fed. R. Crim. P. 32.2 advisory committee's notes on the 2000 amendments ("[B]ecause the ancillary hearing has no bearing on the defendant's right to the property, the defendant has no right to appeal when a final order is, or is not, amended to recognize third party rights.").

                                III.

Zorrilla-Echevarría and Castillo-Peña raise distinct arguments on appeal.  Zorrilla-Echevarría advances two theories as to why the forfeiture order was improper and the funds should be returned to him.  First, he argues that the statutory provisions he

-12-

was convicted under do not confer the authority to impose a money judgment. Second, he claims that even if the court had such authority, the court failed to include the money judgment as part of the original sentence, and did not have the authority to later amend that sentence because the amendment took place well after the original sentence was imposed.

Castillo-Peña also advances two theories on appeal. First, he claims that he was deprived of due process because he was never granted an ancillary hearing. Second, he argues that the delay between the seizure of property and the initiation of the forfeiture proceedings took so long as to result in a due process violation.

## A. Zorrilla-Echevarría's Claims

### 1. Lack of Authority to Enter Money Judgment

Zorrilla-Echevarría argues that the district court lacked the authority to impose a money judgment under the relevant statutory provision. The argument begins with the premise that 31 U.S.C. § 5332(b)(4), by its terms, allows a personal money judgment to be entered only when the property "involved in the offense" is "unavailable." 31 U.S.C. § 5332(b)(2), (b)(4). Zorrilla-Echevarría contends that, since the government had seized the actual cash involved in the offense, it was never unavailable, § 5332(b)(4) was never triggered, and the court thus lacked authority to enter a personal money judgment.

-13-

We do not consider the merits of this argument,[5] as Zorrilla-Echevarría knew that the forfeiture was in the nature of a money judgment at the time his first appeal was docketed, yet he never raised the matter, and that appeal was dismissed. Zorrilla-Echevarría's attempt to do so now is untimely; the initial forfeiture decision is not before us. As a result, we need not address the government's contention that, if the issue is not waived, review is for plain error.

The version of Rule 32.2 in effect at the time of sentencing explained that "[a]t sentencing . . . the order of forfeiture becomes final as to the defendant." Fed. R. Crim. P. 32.2(b)(3) (2008). As a result, an appeal from the judgment imposing the sentence was the appropriate vehicle for Zorrilla-Echevarría to contest the court's authority to impose a money judgment. See Fed. R. Crim. P. 32.2 advisory committee's notes on the 2000 amendments ("Because the order of forfeiture becomes final as to the defendant at the time of sentencing, his right to appeal from that order begins to run at that time."). The present attempt

---

[5] We have held that 21 U.S.C. § 853 authorizes the imposition of a money judgment. See United States v. Hall, 434 F.3d 42, 58-60 (1st Cir. 2006). We have not addressed whether 31 U.S.C. § 5332, which by its own terms requires a money judgment if the property involved in the offense is "unavailable" and "the defendant has insufficient substitute property," also authorizes money judgments in other circumstances. 31 U.S.C. § 5332(b)(2), (b)(4). Section 5332 does provide that "the seizure, restraint, and forfeiture of property under this section shall be governed by [21 U.S.C. § 853]." 31 U.S.C. § 5332(b)(3).

-14-

to challenge this judgment by arguing that the court lacked authority to impose a money judgment forfeiture is untimely. See Fed. R. App. P. 4(b).

This is so notwithstanding two potentially contrary considerations. First, it is true that the judgment itself did not contain any mention of the forfeiture, in contravention of the requirements of Rule 32.2(b)(3). See Fed. R. Crim. P. 32.2(b)(3) (2008) (explaining that the order of forfeiture "must . . . be included in the judgment") (emphasis added).

While this should not have happened, as it is a violation of the Rule, "[t]he appropriate remedy for violation of the Rule depends on context." United States v. Yeje-Cabrera 430 F.3d 1, 14 (1st Cir. 2005). The failure to include the forfeiture in the judgment, when a preliminary notice of forfeiture has issued, and at sentencing the forfeiture question was discussed, is "largely a housekeeping" issue and "does not itself go to any fundamental rights of defendants."[6] Id. at 14-15. As a result, there is no reason that the failure to explicitly include the forfeiture in the judgment itself somehow prevented Zorrilla-Echevarría from raising the issue during his first appeal.

---

[6] This conclusion is reinforced by a 2009 amendment to Rule 32.2 (which was not in force at the time of the original judgment), providing that "[t]he court must also include the forfeiture order, directly or by reference, in the judgment, but the court's failure to do so may be corrected at any time under Rule 36." Fed. R. Crim. P. 32.2(b)(4)(B) (2010) (emphasis added).

-15-

Second, it is also true that there was some ambiguity in the district court's preliminary forfeiture order as to whether that order imposed a money judgment or a forfeiture of specific property.[7] However, the money judgment nature of the forfeiture order was made clear when Zorrilla-Echevarría and Castillo-Peña's motions for ancillary hearings were denied. There, the district court explained that such hearings "are not appropriate in the context of a money judgment." The district court again explained, in denying the motion for reconsideration regarding the ancillary hearing request, that the court "ordered forfeiture pursuant to a money judgment, not the forfeiture of specific property . . . . Accordingly, the amount that must be turned over . . . is not the actual currency involved in the offense, but an amount equivalent to it." This clarification was provided after the first notice of

---

[7] The preliminary order of forfeiture does not explicitly state that it was a money judgment rather than a forfeiture of specific property. It did state that "Defendant shall forfeit to the United States $543,826.00 in U.S. Currency, which is equal to the total amount of money Defendant obtained as the result of the above-mentioned violations." The "in U.S. Currency" language is unclear and does not indicate whether this was a money judgment or a forfeiture of specific property. The preliminary forfeiture order also explained that "the government has established the requisite nexus between this amount and the aforementioned offenses," a requirement only applicable in the context of a forfeiture of specific property. See Fed. R. Crim. P. 32.2 advisory committee's notes on the 2000 amendments ("To the extent that the government is seeking forfeiture of a particular asset . . . the court must find that the government has established the requisite nexus between the property and the offense."). Nevertheless, any ambiguity in the preliminary order was clarified in time for Zorrilla-Echevarría to raise the argument he now seeks to make during his first appeal.

appeal was filed.  Nevertheless, the clarification took place well before the appeal was actually docketed in the First Circuit, giving Zorrilla-Echevarría ample opportunity to challenge the imposition of the money judgment.[8]

The fact that the judgment was amended to include the forfeiture, and that the preliminary order of forfeiture was amended to slightly alter the value, explicitly include the phrase "money judgment," and omit the "in U.S. currency" language does not permit Zorrilla-Echevarría to raise this challenge that could have been brought in the first appeal.[9]  When post-judgment relief is granted, review of that action on appeal is limited to the change in the judgment created by the post-judgment action; the simple fact that a judgment was amended does not somehow open the entire judgment up to attack.  See Fed. R. Crim. P. 32.2(b)(4)(C) (2010) ("If the court later amends or declines to amend a forfeiture order to include additional property . . . the defendant or the government may file an appeal regarding that property under Federal Rule of Appellate Procedure 4(b).") (emphasis added); cf. Browder

_____

[8]  The second notice of appeal adds further support to this conclusion.  This appeal, and its consolidation with the earlier appeal, makes it clear that Zorrilla-Echevarría knew of, and could have challenged the imposition of, the money judgment during the first appeal.

[9]  The modified preliminary order of forfeiture also omitted any reference to the nexus with the offense required for specific asset forfeitures and the fact that it would become final at sentencing.

-17-

v. Dep't of Corr., 434 U.S. 257, 263 n.7 (1978) (explaining that "an appeal from denial of [Federal Rule of Civil Procedure 60(b) post-judgment] relief does not bring up the underlying judgment for review"); Rodriguez-Antuna v. Chase Manhattan Bank Corp., 871 F.2d 1, 2 (1st Cir. 1989) (appeal from order denying request for relief from judgment does not "resurrect appellants' expired right to contest the merits of the underlying judgment, nor bring the judgment itself before us for review").

Here, the change in the judgment consisted of (1) complying with the formal requirement that the judgment include the forfeiture, (2) a slight change in the dollar amount to be forfeited, (3) an explicit inclusion of the phrase "money judgment" in the preliminary order of forfeiture, and (4) omission of the phrase "in U.S. Currency" after the statement of the dollar amount. None of these changes conferred upon Zorrilla-Echevarría the ability to attack the court's authority to impose a money judgment, when it was perfectly clear during the pendency of the prior appeal that such a judgment was what the court had in fact imposed.[10]

2. Amendment of the Judgment to Include Forfeiture

Zorrilla-Echevarría's second argument is that, even if the district court had the authority to impose a personal money judgment, the process it used was procedurally improper, and thus

---

[10] We do not address whether these changes, of themselves, were permissible, as Zorrilla-Echevarría does not raise this question on appeal.

the final forfeiture is unenforceable. This argument is premised on the fact that the court's failure to include the forfeiture in the judgment was error and his argument that this type of error could not be corrected by amendment. He contends this error renders the forfeiture invalid.

This is incorrect. Federal Rule of Criminal Procedure 36 provides that "[a]fter giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment . . . ." We have noted and now conclude that the omission of a forfeiture from the judgment, where there was a proper preliminary order of forfeiture as well as an imposition of forfeiture at the sentencing hearing, can be remedied under Rule 36.[11] Yeje-Cabrera, 430 F.3d at 14-15, n.6; see also United States v. Quintero, 572 F.3d 351, 353 (7th Cir. 2009) ("[T]he failure to include forfeiture in a judgment, that everyone intended to be included, constitutes a clerical error, correctable under Rule 36.") (applying pre-2009 Rule 32.2).

This conclusion is reinforced by a 2009 amendment to Rule 32.2 (which was not in force at the time of the original judgment),

---

[11] We do not address whether the amendment to the preliminary forfeiture order itself was permissible, as Zorrilla-Echevarría does not raise this question on appeal; he only challenges the amendment of the judgment to include the forfeiture. See Fed. R. Crim. P. 32.2 advisory committee's notes on the 2009 amendments ("Once the sentence has been announced, the rules give the sentencing court only very limited authority to correct errors or omissions in the preliminary forfeiture order.").

-19-

providing that "[t]he court must also include the forfeiture order, directly or by reference, in the judgment, but the court's failure to do so may be corrected at any time under Rule 36." Fed. R. Crim. P. 32.2(b)(4)(B) (2010) (emphasis added).[12]

As a result, the fact that the district court did not initially include the forfeiture in the judgment does not render the forfeiture invalid, given that the district court issued a preliminary notice of forfeiture and included the forfeiture during the sentencing hearing.

## B. Castillo-Peña's Claims

Castillo-Peña argues that he was deprived of due process, because he filed a third party petition asserting that he had a property interest in the seized funds that were in the possession of Customs, but received no hearing to determine his interest in those funds. Castillo-Peña also makes a second argument that the delay "between seizure of property and the institution of forfeiture proceedings" was sufficient, of itself, to cause a constitutional violation of due process.

---

[12] Zorrilla-Echevarría also states that the court erred by not issuing a final forfeiture order at the time of sentencing. This is based on a misreading of Rule 32.2. That "the order of forfeiture becomes final as to the defendant," Fed. R. Crim. P. 32.2(b)(3) (2008), at the time of sentencing does not mean that the court is required to issue a separate final order of forfeiture at that time.

1. <u>Third-Party Hearing</u>

Castillo-Peña was not entitled to invoke the ancillary proceeding provisions of 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2, as the forfeiture was in the nature of a money judgment.  It is clear that "no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment," Fed. R. Crim. P. 32.2(c)(1) (2008), because such a judgment "is an <u>in personam</u> judgment against the defendant and not an order directed at specific assets in which any third party could have any interest," Fed. R. Crim. P. 32.2 advisory committee's notes on the 2000 amendments.

However, two considerations lead us to accept the government's invitation to remand.  First, at issue is not solely the money judgment, but also the fact that the government seized physical cash at the time of Zorrilla-Echevarría's arrest.  To satisfy the money judgment forfeiture, the district court ordered, on March 12, 2010 (in the same set of orders that amended the judgment to include the forfeiture and amended the preliminary forfeiture order), an attachment of those funds pursuant to Federal Rule of Civil Procedure 64 and Puerto Rico Rule of Civil Procedure

56.[13] This was done without a hearing, which Castillo-Peña contends violates due process.

Second, there was some confusion, as we have outlined, as to the nature of the forfeiture order, for which the government bears much of the responsibility.

The government "concedes the case should be remanded to the district court so that the government may properly notify potential third parties, including Castillo-Peña," as the attachment of the actual, physical currency "only became clear" in the district court's March 12 order. To allow this to happen, the government requests that we vacate that portion of the final order of forfeiture which uses the attached funds to satisfy the money judgment against Zorrilla-Echevarría. Whether or not this is required, there has been no objection, so we follow the government's suggestion. Accordingly, we vacate the final order of forfeiture and remand to the district court to provide Castillo-Peña[14] with an opportunity to challenge the attachment of the

---

[13] As no challenge is raised to the use of this procedure to attach the funds, we do not comment on its propriety. The challenge here focuses solely on the lack of a hearing to protect third party interests.

[14] There is no need for the district court to assess on remand the interests of any other third parties. Publication of the forfeiture has already taken place, no one other than Castillo-Peña has responded, and no challenge has been raised to the publication's adequacy. See Fed. R. Crim. P. 32.2 advisory committee's notes on the 2000 amendments ("[I]f a third party has notice of the forfeiture but fails to file a timely claim, his or her interests are extinguished, and may not be recognized when the

-22-

$543,731 used to satisfy the money judgment against Zorrilla-Echevarría. We leave it to the district court to determine the appropriate procedures to use to provide an adequate opportunity to contest the attachment.[15]

### 2. Delay

Castillo-Peña's second claim is that the delay between the seizure of the property and the institution of forfeiture proceedings was sufficient, of itself, to cause a deprivation of

court enters the final order of forfeiture.").

[15] The government suggests that the ancillary proceedings of 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c) are the appropriate procedures. However, neither Rule 32.2(c) nor 21 U.S.C. § 853(n) apply, on their face, to attachments of property made to satisfy a personal money judgment. 21 U.S.C. § 853(n)(2) requires a hearing to allow third parties to attempt to establish an interest "in property which has been ordered forfeited." Rule 32.2 provides for a third party hearing only "as prescribed by statute." Fed. R. Crim. P. 32.2(c)(1) (2010). Here, however, we do not have any "property which has been ordered forfeited"; as the discussion above makes clear, the distinction between ordering property forfeited and entering a money judgment is deeply embedded in Rule 32.2 and the relevant caselaw.

We have previously explained that "[a] money judgment permits the government to collect on the forfeiture order in the same way that a successful plaintiff collects a money judgment from a civil defendant. Thus, even if a defendant does not have sufficient funds to cover the forfeiture at the time of the conviction, the government may seize future assets to satisfy the order." United States v. Misla-Aldarondo, 478 F.3d 52, 73 (1st Cir. 2007) (alteration in original) (quoting Hall, 434 F.3d at 59). However, we have noted, but not taken a position regarding, an ambiguity "as to whether the government can seize assets with a money judgment just as any judgment creditor could, or whether the government must follow the substitute assets provisions of 21 U.S.C. § 853(p)." Id. at 74.

This distinction is relevant because there are particular procedures in place governing forfeiture of substitute property. See Fed. R. Crim. P. 32.2(e) (2010).

-23-

property in violation of the due process clause. This is not so.

Castillo-Peña relies on United States v. $8,850, 461 U.S. 555 (1983), for this argument. There, the Supreme Court assessed whether "the Government's delay in filing a civil forfeiture proceeding violated [a criminal defendant's] due process right to a hearing 'at a meaningful time.'" Id. at 562 (quoting Fuentes v. Shevin, 407 U.S. 67, 80 (1972)). The Court, analogizing to a defendant's right to a speedy trial, explained that the same four factors should determine whether a delay in instituting forfeiture proceedings amounts to a constitutional violation: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 564.

We do not need to address whether or not there is a distinction for due process purposes between the status of a defendant, as in $8,850, and the status of a third-party claimant, as here. The only delay complained about here was not in the starting of the forfeiture procedures, but to hearing Castillo-Peña's claim to the money.

While the confusion in the district court, largely induced by the government's sloppiness, about whether this was a money judgment or a forfeiture of the specific cash seized was

unfortunate, there was no denial of due process.  Castillo-Peña also had alternatives available to him which he did not take.[16]

Castillo-Peña will receive a hearing on remand under the government's concession and we see no prejudice to him.  As a result, Castillo-Peña's claim that the delay itself constituted a deprivation  of property without due process fails.

IV.

We affirm the entry of the money judgment order of forfeiture with respect to Zorrilla-Echevarría.  We vacate the portion of the final order of forfeiture ordering that the attached $543,731 in cash shall be used to satisfy the money judgment, and remand to the district court for further proceedings consistent with this opinion.  So ordered.

---

[16]  The $8,850 Court noted that an individual can take various steps to secure the return of property, including filing an equitable action for return of the seized property and filing a motion for return of property under Federal Rule of Criminal Procedure 41(g).  United States v. $8,850, 461 U.S. 555, 569 (1983).