# United States Court of Appeals
## For the First Circuit

No. 17-1096

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN G. CATALA,

Defendant,

DAVID VOGEL,

Claimant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]
[Hon. Lincoln D. Almond, U.S. Magistrate Judge]

Before
Lynch, Selya and Thompson,
Circuit Judges.

Barbara A. Barrow, Moore, Virgadamo & Lynch Ltd., David Vogel, and Vogel Law PLLC on brief for appellant.
Stephen G. Dambruch, Acting United States Attorney, and Donald C. Lockhart, Assistant United States Attorney, on brief for appellee.

August 30, 2017

**SELYA**, **Circuit Judge**.  This case requires us to answer a question of first impression in this circuit — a question involving the relative priority, as between the government and a general creditor, with respect to claims relating to assets forfeited as the proceeds of criminal activity.  The district court resolved this question in the government's favor and denied the general creditor's claim.  After careful consideration, we affirm.

The facts are straightforward.  In April of 2007, claimant-appellant David Vogel loaned an acquaintance, defendant Juan G. Catala, $8,500 during a trip to Las Vegas.  When Catala did not repay the loan, the appellant sued him in a Rhode Island state court.  In April of 2012, a state judge entered a judgment in the amount of $8,500, plus statutory interest and costs, in favor of the appellant.  The Rhode Island Supreme Court subsequently affirmed that judgment.  See Vogel v. Catala, 63 A.3d 519, 522-23 (R.I. 2013).

For several years, the appellant's efforts to collect the judgment proved fruitless.  A ray of hope appeared when, in mid-2016, federal authorities charged the defendant with distributing oxycodone and marijuana in violation of federal law.  See 21 U.S.C. § 841(a).  As part of the investigation leading to those charges, federal agents had searched the defendant's home and seized $14,792 in cash.

The case was docketed in the United States District Court for the District of Rhode Island, and the defendant pleaded guilty to the charges. The court determined that the $14,792 in cash represented the proceeds of the defendant's illegal drug dealings and was, therefore, subject to forfeiture. See 21 U.S.C. § 853(a). Based on this determination, the court entered a preliminary order of forfeiture.

Within a matter of days, the appellant filed a third-party petition, in which he asserted a claim to the seized cash under 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c). The government moved to dismiss his claim under Rule 32.2(c)(1)(A), which authorizes dismissal of a third-party petition for, among other things, lack of standing or failure to state a claim. The district court granted the government's motion, ruling that the appellant had no legal right to the forfeited proceeds.[1] This timely appeal followed.

A motion to dismiss a third-party petition in a criminal forfeiture proceeding is analyzed in the same way as a motion to dismiss a complaint under Rule 12(b) of the Federal Rules of Civil Procedure. See Willis Mgmt. (Vt.), Ltd. v. United States, 652 F.3d 236, 241 (2d Cir. 2011). Consequently, a third-party

---

[1] The initial ruling was made by a magistrate judge and later confirmed by a district judge. We do not distinguish between these two judicial officers but, rather, take an institutional view and refer throughout to the district court.

petitioner under section 853(n) must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Where, as here, the district court finds that the petition does not satisfy this standard, its order of dismissal is reviewed de novo. See Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006).

Under section 853, individuals convicted of drug-trafficking crimes must forfeit "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." 21 U.S.C. § 853(a)(1). They also must forfeit any instrumentalities used to commit the crime. See id. § 853(a)(2).

In this appeal, the appellant takes issue with the district court's application of section 853(n). Pertinently, the statute sets forth the procedures through which a third party can challenge a preliminary order of forfeiture. To initiate the process, the third party must petition the court for a hearing to evaluate his interest in the property that the government says is subject to forfeiture. See 21 U.S.C. § 853(n)(2); United States v. Zorrilla-Echevarría, 671 F.3d 1, 6 (1st Cir. 2011). At the hearing, the third party must establish that he has standing within the meaning of section 853 by "asserting a legal interest" in the property. 21 U.S.C. § 853(n)(2); see United States v. Watts, 786 F.3d 152, 160 (2d Cir. 2015). He must then show his entitlement

- 4 -

to relief on the merits by establishing (as relevant here) that the order of forfeiture is invalid because any right to the property "was vested in [him] rather than the defendant or [that his right to the property] was superior to any right . . . of the defendant at the time of the commission of the acts which gave rise to the forfeiture."  21 U.S.C. § 853(n)(6)(A).[2]

If the court determines that the third party has standing and that his interest is valid and superior to that of the defendant's interest within the meaning of section 853(n), it may amend the preliminary order of forfeiture accordingly.  See Fed. R. Crim. P. 32.2(c)(2).  If, however, the court concludes that the third party lacks a valid and superior interest, the preliminary order of forfeiture becomes final.  See id.

Against this backdrop, we turn to the appellant's claim. Before examining the merits of that claim, we pause to assay his standing to raise it.

This case implicates two different types of standing: Article III standing and statutory standing.  Article III standing is a critical component of the Constitution's case-or-controversy

---

[2] Although the statute also affords relief to a third party who can show that he "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture," 21 U.S.C. § 853(n)(6)(B), the appellant does not argue that he is entitled to any relief under this provision.  Consequently, we do not probe this point.

- 5 -

requirement. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992); see also U.S. Const. art. III, § 2. Because Article III standing is a sine qua non to federal judicial involvement, a federal court must resolve any doubts about such standing before proceeding to adjudicate the merits of a given case. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); cf. Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 59 (1st Cir. 2003) (noting that rule requiring courts to address jurisdictional questions at the outset is not "absolute" outside of Article III context). This requirement applies both in the trial court and at all stages of review. See Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997). Indeed, the requirement applies even when neither party has raised the issue. See McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004).

Article III standing requires a plaintiff to identify an actual injury, traceable to the adverse party's conduct, that likely can be redressed by a favorable decision. See Lujan, 504 U.S. at 560-61; Nisselson, 469 F.3d at 150. Those requirements are plainly satisfied in this case.

Statutory standing is a horse of a different hue. It relates to whether the plaintiff has a cause of action under a particular statute. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1387-88 n.4 (2014). Unlike Article III standing, though, the existence of statutory standing

is not a prerequisite to a court's power to adjudicate a case. See id. Thus, an inquiring court may opt, in the interest of efficiency, to forgo an inquiry into statutory standing and reject a claim on the merits. See First State Ins. Co. v. Nat'l Cas. Co., 781 F.3d 7, 10 n.2 (1st Cir. 2015). For simplicity's sake, we choose to follow that path and bypass this facet of the standing paradigm. Accordingly, we assume (without deciding) that the appellant has met the statutory standing requirement of having a "legal interest" in the property to be forfeited, 21 U.S.C. § 853(n)(2), and proceed to the merits of the appellant's claim.

To prevail on the merits under section 853(n)(6)(A), a third party must prove that, at the time the acts giving rise to the forfeiture were committed, the right to the property to be forfeited was either vested in him rather than the defendant or that his interest in it was superior to the defendant's interest. See 21 U.S.C. § 853(n)(6)(A); see also Watts, 786 F.3d at 166. This provision cannot be read in a vacuum but, rather, must be read in tandem with section 853(c). See United States v. Timley, 507 F.3d 1125, 1130 (8th Cir. 2007). The latter provision, which embodies the relation-back doctrine, specifies that the right to all property used in committing, and any proceeds derived from, a criminal offense "vests in the United States upon the commission of the act giving rise to [the] forfeiture." 21 U.S.C. § 853(c); see Watts, 786 F.3d at 166; United States v. Hooper, 229 F.3d 818,

- 7 -

822 (9th Cir. 2000). It follows inexorably that a third party asserting an interest in forfeited property must establish that his interest in that specific property existed before the commission of the crime that led to the forfeiture. See Hooper, 229 F.3d at 821-22.

Here, then, the appellant must show that his interest in the forfeited cash existed before the defendant engaged in the drug distribution that sparked his arrest. The relation-back doctrine stands in his way. A third party cannot have an interest in proceeds that do not yet exist. See Timley, 507 F.3d at 1130. Since proceeds from a crime "do not precede [the commission of] the crime," the government's interest in proceeds forfeited pursuant to section 853(a)(1) will almost always pre-date that of a third party who is a general creditor. Hooper, 229 F.3d at 822; see Watts, 786 F.3d at 166 (explaining that "a petitioner is unlikely ever to prevail . . . where the forfeited property consists of 'proceeds' derived from or traceable to a criminal offense"). Thus, section 853(n)(6)(A) claims are generally successful only when the third party can claim an interest in the instrumentalities of a crime pursuant to section 853(a)(2), which sometimes can preexist the crime itself. See Watts, 786 F.3d at 167; see also Hooper, 229 F.3d at 822 (explaining that a claimant may prevail under section 853(n)(6)(A) even though her spouse used

- 8 -

the family car for drug trafficking by showing that her interest in the vehicle predated the criminal activity).

These principles are dispositive here. There is no suggestion that the forfeited cash came from any source other than the defendant's drug-trafficking activities. So viewed, the government's interest in the forfeited cash vested as soon as the defendant began selling drugs and before any proceeds started to reach him. See 21 U.S.C. § 853(c). To the extent that the appellant had any interest in the defendant's ill-gotten gains, that interest could not possibly have predated the defendant's acquisition of the funds and, thus, could not have predated the government's interest. See Watts, 786 F.3d at 166-67. Moreover, since the appellant's $8,500 loan to the defendant did not constitute a discrete "instrumentality" used in his drug-trafficking activities, the appellant cannot claim that he had a prior, superior interest under section 853(n)(6)(A) and section 853(a)(2).

In an effort to blunt the force of this reasoning, the appellant contends that because he had a valid, preexisting legal interest in the defendant's finances — an interest resulting from the state court judgment — he is entitled to repayment from the cash that the government proposes to forfeit. This contention lacks force. While the appellant has an obvious interest in obtaining satisfaction of the outstanding judgment, his interest

is, at most, that of a general creditor.  See United States v. Reckmeyer, 836 F.2d 200, 206 & n.3 (4th Cir. 1987).  Such an interest is not sufficient to accord priority to the appellant's claim to a specific chunk of cash (the $14,792 that was attributable to the defendant's drug-trafficking activities and seized when he was arrested).  See United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 44 (1st Cir. 2003).

This result conforms not only to the letter of the forfeiture statute but also to the policies behind it.  After all, if a criminal defendant's forfeited cash could be used to defray his debts to general creditors, the defendant would continue to benefit from his illicit activities.  Such a result would be at cross-purposes with the goals of criminal forfeiture, such as "separating a criminal from his ill-gotten gains" and "lessen[ing] the economic power" of unlawful activities.  Honeycutt v. United States, 137 S. Ct. 1626, 1631 (2017) (alteration in original) (quoting Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 629-30 (1989)).  We refuse to carve such a gaping hole into the forfeiture framework.

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**Affirmed.**