KAYATTA, Circuit Judge.
Defendant New England Coffee Company, operating as a subsidiary of Reily Foods Company,[1] sells a "Hazelnut Crème" coffee. Kathy Dumont contends that she purchased the coffee because she thought that a coffee styled "Hazelnut Crème" contained some hazelnut. After learning that the "Hazelnut Crème" coffee contained no hazelnut at all, Dumont brought this putative class action challenging the coffee's labeling as a violation of Massachusetts' consumer protection laws. The district court dismissed the case for failure to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). For the following reasons, we reverse.
I.
We set out the facts as alleged in the complaint, but do not credit "unsupported conclusions or assertions." U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 42 (1st Cir. 2009). At all times relevant to this case, the front label of the package containing the Hazelnut Crème coffee described the coffee as follows: "freshly ground," "100% Arabica Coffee," "Hazelnut Crème," "Medium Bodied," and "Rich, Nutty Flavor." The ingredients label on *38 the back of the package provided the following list of ingredients: "100% Arabica Coffee Naturally and Artificially Flavored." There is no image of a hazelnut anywhere on the bag.[2]
Kathy Dumont purchased in Massachusetts at least one package of the Hazelnut Crème coffee labeled as described above. Dumont alleges that she would not have purchased the coffee had she known that it did not contain some hazelnut.
Suing individually and on behalf of a putative nationwide class of allegedly similarly situated consumers, Dumont claimed that the packaging was (1) an unfair and deceptive practice under Massachusetts General Laws chapter 93A and (2) untrue and misleading advertising under Massachusetts General Laws chapter 266, section 91. In the alternative, Dumont claimed unjust enrichment. The district court dismissed Dumont's complaint without leave to amend. Citing Federal Rule of Civil Procedure 9(b), the court held that "the complaint offer[ed] insufficient detail regarding the circumstances of plaintiff's purchase" and that it therefore "fail[ed] to pass muster under the relevant pleading standard." Dumont v. Reily Foods Co., No. CV 18-10907-RWZ, 2018 WL 4571656, at *1 (D. Mass. Sept. 24, 2018) (record citation omitted).
Dumont then appealed to this court. Though her Notice of Appeal covers the entire judgment of dismissal, her brief makes no argument regarding the dismissal of her claim under Massachusetts General Laws chapter 266, section 91, or her alternative claim for unjust enrichment. Any such argument is therefore waived. See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015). So, we address only the dismissal of her claim under Massachusetts General Law Chapter 93A, § 2(a).
II.
A.
We turn first to Dumont's argument that the district court erred in its conclusion that her complaint provided insufficiently particularized facts to satisfy Rule 9(b). We review de novo the dismissal of a complaint for failure to comply with Rule 9(b). U.S. ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 123 (1st Cir. 2013).
Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." We have explained that "[t]he circumstances to be stated with particularity under Rule 9(b) generally consist of 'the who, what, where, and when of the allegedly [misleading] representation.' " Kaufman v. CVS Caremark Corp., 836 F.3d 88, 91 (1st Cir. 2016) (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004) ) (alteration in original). The district court concluded that Dumont's complaint failed this test:
Beyond the allegation that "Plaintiff purchased [New England Coffee Company's] Hazelnut Crème Coffee" and the conclusory assertion that she "reasonably believed that the coffee contained ... hazelnut," the complaint offers insufficient detail regarding the circumstances of the plaintiff's purchase. Without more, her complaint fails to pass muster under [ Rule 9(b) ].
Dumont, 2018 WL 4571656, at *1 (record citation omitted). Dumont presumes that Rule 9(b) applies to the pleading of her *39 chapter 93A claim, so we shall too. Cf. Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 21 (1st Cir. 2017) (observing that the Rule 9(b) heightened pleading standard applies to claims under chapter 93A that involve fraud). She contends that her pleading provided sufficient particularity to satisfy Rule 9(b).
This court's decision in Kaufman v. CVS Caremark Corporation favors Dumont. 836 F.3d at 90-91. In that case, a consumer claimed that a CVS-brand dietary supplement labeled as promoting "heart health" was deceptive because no scientifically valid studies supported the "heart health" statement. Id. at 90. Concluding that the complaint satisfied the Rule 9(b) heightened pleading standard, this court observed that "CVS is the 'who'; the heart health statements are the 'what'; the label is the 'where'; and the occasion on which Kaufman purchased the product is the 'when.' " Id. at 91. It follows here that Reily Foods and New England Coffee Company are the "who"; the "Hazelnut Crème" statement is the "what"; the label is the "where"; and the occasion on which Dumont purchased the coffee is the "when." The defendants barely acknowledge the import of our holding in Kaufman, wanly suggesting in a footnote that it is distinguishable because the label in that case had less information. But that distinction suggests that the complaint in this case had more, not less, particularity than the complaint in Kaufman. Moreover, such a difference would go to the merits of the claim, not the Rule 9(b) question.
In any event, even were we to ignore Kaufman, we would find no merit in defendants' contention that the complaint failed to satisfy Rule 9(b) by neglecting to include further details about Dumont's reliance on the allegedly misleading statement, including the date and location of her purchase. As for the date of the purchase, the complaint makes clear that the purchase occurred when the defendants were selling the "Hazelnut Crème" coffee in the package pictured in the complaint. The defendants offer no reason why further particularity on the date is relevant. So, too, the other "circumstances" the defendants say are lacking (e.g., where in Massachusetts Dumont made the purchase and whether "similar" products were present at the point of sale) strike us as either irrelevant or the potential subjects of discovery.
The core purposes of Rule 9(b) are "to place the defendants on notice and enable them to prepare meaningful responses," "to preclude the use of a groundless fraud claim as pretext for discovering a wrong," and "to safeguard defendants from frivolous charges [that] might damage their reputation." New England Data Servs., Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987). The defendants do not suggest that they required any further particularity to respond to the complaint. This is not a case, after all, in which the defendant can claim that it never made the allegedly deceptive statement. Nor is this a case in which liability turns on more precise information concerning the "when" or the "where." Rather, it turns on an assessment of the very particularly identified "what" in the product label. We conclude, therefore, that the complaint satisfied the Rule 9(b) particularity standard.
B.
Citing Federal Rule of Civil Procedure 12(b)(6), the defendants urge us to affirm on the alternative basis that the complaint failed to state a claim for a violation of chapter 93A. Our task is to "first disregard conclusory allegations that merely parrot the relevant legal standard" and "then inquire whether the remaining factual allegations state a plausible, rather *40 than merely possible, assertion of defendants' liability." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 231 (1st Cir. 2013). As a federal court sitting in diversity, we look to state law, as articulated by the Supreme Judicial Court of Massachusetts, for the substantive rules of decision. Shaulis v. Nordstrom, Inc., 865 F.3d 1, 6 (1st Cir. 2017).
Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). On appeal, Dumont argues solely that the labeling was "deceptive," not that it was "unfair." "[A]n advertisement is deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product)." Aspinall v. Philip Morris Cos., 442 Mass. 381, 813 N.E.2d 476, 488 (2004). So, the question under Massachusetts law is whether the label had the capacity to mislead consumers, acting reasonably under the circumstances, to believe that the coffee contained some hazelnut.
That question is one of fact. See id. at 486 (noting that "whether conduct is deceptive is initially a question of fact"). As with any question of fact, our role is limited to defining the outer boundaries of its answer -- i.e., the point at which a juror could reasonably find only one way. See Chervin v. Travelers Ins. Co., 448 Mass. 95, 858 N.E.2d 746, 759 (2006) ("Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [chapter] 93A violation is a question of law." (quoting Schwanbeck v. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 578 N.E.2d 789, 803-04 (1991) (internal citation omitted))); Full Spectrum Software, Inc. v. Forte Automation Sys., Inc., 858 F.3d 666, 671-72 (1st Cir. 2017) (same).
The procedural posture of this case further limits our role. At the pleading stage, "we accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." S.E.C. v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). So, we need only determine whether the complaint's allegations make it plausible that, on a full factual record, a factfinder could reasonably regard the label as having the capacity to mislead.
One might presume that a reasonable consumer who, like Dumont, cared whether the coffee she intended to purchase contained real hazelnut would check the list of ingredients. On the other hand, perhaps a reasonable consumer would find in the product name sufficient assurance so as to see no need to search the fine print on the back of the package, much like one might easily buy a hazelnut cake without studying the ingredients list to confirm that the cake actually contains some hazelnut. And the complaint makes clear that convention in the industry -- presumably in large part because of federal labeling requirements -- is to state on the front of a package containing a product that is nut flavored (but that contains no nuts) that the product is naturally or artificially flavored. Indeed, another Reily Foods subsidiary that sells a "hazelnut" coffee includes a "flavoring" disclosure on the front of its package.
Our dissenting colleague envisions a more erudite reader of labels, tipped off by the accent grave on the word "crème," and armed perhaps with several dictionaries, a bit like a federal judge reading a statute. We are less confident that "common parlance" would exhibit such linguistic precision.
*41 Indeed, we confess that one of us thought "crème" was a fancy word for cream, with Hazelnut Crème being akin, for example, to hazelnut butter, a product often found in another aisle of the supermarket.
Our dissenting colleague also points out that the package says "Freshly Ground 100% Arabica Coffee." The proposition -- by no means unreasonable -- is that a consumer could read this statement in isolation as saying that the package contains only coffee (and Arabica coffee at that), with no nuts (or anything else). But a consumer might instead read this statement as saying that 100% of the coffee in the package is of the Arabica variety. After all, if there is nothing in the package other than coffee, what does Hazelnut Crème mean to say? Indeed, even Reily Foods concedes that the package also contains some flavoring, so it cannot be the case that "100% Arabica Coffee" means the package contains coffee alone.
None of this is to say that our dissenting colleague's reading is by any means unreasonable. To the contrary, we ourselves would likely land upon that reading were we in the grocery aisle with some time to peruse the package. That being said, we think it best that six jurors, rather than three judges, decide on a full record whether the challenged label "has the capacity to mislead" reasonably acting, hazelnut-loving consumers. Aspinall, 813 N.E.2d at 488. And we see no unfair cost in recognizing a state-law claim that -- as discussed in the following subsection -- can only be lodged against manufacturers that fail to adhere to the rules and safe harbors that have been created by the FDA and that help form consumers' expectations in reading labels. Therefore, and while it is certainly a close question for the reasons well marshalled by the thoughtful dissent, we hold that Dumont's complaint states a plausible claim for relief.
C.
The defendants propose one additional alternative ground for affirming the dismissal of Dumont's complaint: Even if the complaint alleges a claim under chapter 93A, they argue, that claim is impliedly preempted by the Federal Food, Drug, and Cosmetic Act [FDCA], 21 U.S.C. § 301 et. seq.
Neither the Supreme Court nor this circuit has addressed the standard governing preemption of food-labeling suits brought under state law. But the parties' common ground on this issue eliminates our need to venture fully into this thorny area of the law. Dumont concedes that a Massachusetts law that imposed a labeling requirement beyond that imposed by federal law would be expressly preempted. Hence, the complaint alleges that the defendants' label violates federal labeling requirements, see 21 C.F.R. § 101.22(i). The defendants do not contest this assertion. Nor do they contest that they easily could have complied with both federal labeling law and the state requirement that would be imposed by Dumont's proposed application of chapter 93A.
The defendants instead contend only that the application of chapter 93A as proposed by Dumont is impliedly preempted as an attempt to use a state law to enforce federal requirements, thereby potentially interfering with federal enforcement of the food-labeling provisions of the FDCA. In support of this argument, the defendants point to the Supreme Court's opinion in Buckman Company v. Plaintiffs' Legal Committee, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). In that case, patients who suffered injuries from implantation of orthopedic bone screws sought damages under state tort law on the theory *42 that the defendant made fraudulent representations to the Food and Drug Administration (FDA) in the course of obtaining approval to market the screws. Id. at 343, 121 S.Ct. 1012. The Court decided that the claims conflicted with -- and were therefore impliedly preempted by -- the FDA's statutory enforcement scheme. Id. at 348 & n.2, 121 S.Ct. 1012. "State-law fraud-on-the-FDA claims," the Court concluded, "inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." Id. at 350, 121 S.Ct. 1012. To avoid implied preemption, the plaintiffs' claims would have had to "rely[ ] on traditional state tort law which had predated the federal enactments in question[ ]." Id. at 353, 121 S.Ct. 1012.
Dumont agrees with the defendants that this reasoning in Buckman applies by analogy to her claim implicating federal food-labeling requirements. Dumont argues, therefore, that chapter 93A predates the applicable federal requirements, and that she is not seeking to impose state-tort liability because the label violates the FDCA, but rather because it independently violates chapter 93A. Defendants, in turn, do not argue that chapter 93A is not a traditional tort-like law that predates the FDCA.
The defendants also concede that a state-law food-labeling claim can avoid preemption by "provid[ing] detailed allegations that would support a finding that consumers would be plausibly deceived by the packaging independently of any packaging standards that may be established under FDCA regulations." Indeed, they point us to Eighth and Ninth Circuit cases describing, in the medical device context, the "narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption": "The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted by [the FDCA's medical device preemption provision, 21 U.S.C. § 360k ], but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under Buckman ))." In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig., 623 F.3d 1200, 1204 (8th Cir. 2010) (quoting Riley v. Cordis Corp., 625 F. Supp. 2d 769, 777 (D. Minn. 2009) ); see also Perez v. Nidek Co., 711 F.3d 1109, 1120 (9th Cir. 2013) (same). Dumont does not object to the defendants' application of this "narrow gap" test in the food-labeling context, but argues instead that her claim fits through the "narrow gap."
Based on the parties' foregoing positions, we therefore presume -- but do not hold -- that Dumont's complaint is preempted unless the conduct it pleads: (1) violates FDCA labeling requirements and (2) would also violate chapter 93A even if the FDCA did not exist. With that test in mind, we turn back to the complaint.
We agree with the defendants that the complaint can be read in part as seeking to hold the defendants liable because they violated the federal false-labeling standards codified at 21 C.F.R. § 101.22, an implementing regulation promulgated under the FDCA. The complaint goes so far as to argue that "[s]uch mislabeling[ ] and misbranding [under federal law] constitutes unfair and deceptive conduct in violation of [ chapter] 93A, § 2." And Dumont offers no argument for how the complaint, so construed, survives an implied preemption defense. For that reason, any claim premised on the violation of federal law will remain dismissed, albeit on the alternative grounds of preemption and waiver. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by *43 some effort at developed argumentation, are deemed waived.").
Dumont contends, though, that the complaint also "seeks to vindicate the separate and independent right to be free from deceptive and unfair conduct." And the complaint can indeed be read to allege liability not because the label constitutes misbranding under federal law, but rather because the label "has the capacity ... to deceive or mislead reasonable consumers," in violation of chapter 93A. Under that reading of the complaint, the allegation that the label violated the FDCA serves simply to counter a claim of express preemption.
It is also true, as we observed above, that the FDCA requirements effectively established custom and practice in the industry. Accordingly, it may be that a consumer's experience with that custom and practice primes her to infer from the absence of a flavoring disclosure that the product gets its characterizing nutty flavor from the real nut. But we find nothing in Buckman to suggest that such an indirect relationship between a state-law claim and federal law warrants preemption, at least as long as the factfinder avoids equating violation of the federal law with deception under the state law. Suppose, for example, that a pharmacist told a patient that a product was FDA approved, but it was not. We doubt that the consumer's fraud claim under state common law would be preempted merely because the consumer's reliance evidence was buttressed by the background knowledge that FDA approval connotes efficacy and safety.
We conclude, in sum, that under the parties' chosen standard, Dumont's claim under chapter 93A is not impliedly preempted by federal law. Of course, the FDCA exists, and it will limit the scope of Dumont's argument. Its dual preemptive force will restrict the factfinder to determining whether conduct that does violate the federal regulations is also deceptive under Massachusetts law by virtue of its nature rather than its federal illegality. Nevertheless, thus constrained, the claim as plausibly construed survives the defendants' implied preemption argument.[3]
III.
For the foregoing reasons, we reverse the district court's dismissal of the complaint.

The defendants' brief confusingly claims both that Reily Foods is a successor to New England Coffee Company and that New England Coffee Company is Reily Foods' subsidiary. Which description is correct makes no difference to this appeal.

Remarkably, neither party furnished us with a picture of the label large enough to replicate in a legible form for the reader. Cf., e.g., Kaufman v. CVS Caremark Corp., 836 F.3d 88, 90 (1st Cir. 2016) (containing the image of an allegedly deceptive product label).

Any other elements Dumont must satisfy to recover under Chapter 93A are not at issue in this appeal or decided by this opinion.